SUBURBAN LODGES OF AMERICA, INC., Appellee,

v.

CITY OF COLUMBUS GRAPHICS COMMISSION, Appellant.

[Cite as *Suburban Lodges of Am., Inc. v. Columbus Graphics Comm.* (2000), 145 Ohio App.3d 6.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 99AP–1065.

Decided Oct. 12, 2000.

8

*Shihab & Associates, Gus M. Shihab* and *M. Jason Founds,* for appellee.

*Janet E. Jackson,* City Attorney, and *Deborah F. Hoffman,* Assistant City Attorney, for appellant.

LAZARUS, Judge.

Appellant, City of Columbus Graphics Commission, appeals from the judgment of the Franklin County Court of Common Pleas declaring certain provisions of the Columbus City Zoning Code governing on-premises sign usage along freeways and interstate highways to be unconstitutional infringements on commercial speech under the First and Fourteenth Amendments to the United States

Constitution as applied to appellee, Suburban Lodges of America, Inc. For the reasons that follow, we reverse.

In general, the Columbus City Zoning Code ("C.C.") at issue in this case, Sections 3375.06(E) and 3379.01(D), provides that permanent on-premises signs (those advertising or related to the use of the lot on which the sign is located) directed toward freeways and interstate highways may only include the business logo and language identifying the use of activity by name, the street address, and the principal product or principal service being advertised. Specifically, C.C. 3375.06(E) provides as follows:

"The following additional limitations shall apply to the installation of an on-premises sign to be directed to those portions of a freeway with a speed limit greater than fifty (50) miles per hour.

"1. No more than one (1) on-premises ground sign or wall sign directed to said freeway shall be displayed on any lot, or no more than two (2) single-faced wall signs shall be utilized with each sign face directed to vehicular traffic in only one direction, except as provided in C.C. 3377.16 for a motorist services use;

"2. *Sign copy shall be limited to identification of the use by name, logo, street address and principal product or service; and*

"3. No co-op *signs, changeable copy signs,* mechanical movement or *flashing graphics* shall be displayed." (Emphasis added.)

Likewise, C.C. 3379.01(D) provides as follows:

"A *permanent on-premises sign* may be erected within six hundred sixty (660) feet of any *Interstate System right-of-way line* in conformance with this Graphics Code, *provided that any copy displayed on such* sign *shall be limited to identification of the* use or activity *by name, logo and street address, principal product or principal service. No mechanical movement or flashing lights shall be utilized.*" (Emphasis added.)

Appellee, Suburban Lodges, owning a facility adjacent to Interstate 70 on the east side of Columbus, sought to erect a sign that would include the Suburban Lodges' logo and the words "Suburban Lodges," "Weekly Rates" and "Studios/Kitchens." Because the proposed inclusion of the words "Weekly Rates" is not authorized under C.C. 3375.06(E) and 3379.01(D), Suburban Lodges sought a variance with the Columbus Graphics Commission. On July 21, 1998, the commission denied appellee's request.

Pursuant to R.C. Chapter 2506, Suburban Lodges appealed to the Franklin County Court of Common Pleas the decision of the commission denying its request for a variance. In its appeal, Suburban Lodges argued that denial of the variance was improper under governing Ohio zoning case law, in particular, *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692, and,

alternatively, that the ordinances were unconstitutional under the Free Speech Clause of the First Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment. In its constitutional challenge, Suburban Lodges contended that the ordinances, on their face, and as applied to the proposed sign in this case, were not a reasonable time, place, and manner restriction on speech, were an unconstitutional regulation of commercial speech, and were unconstitutionally overbroad because of their potential application to noncommercial speech.

By decision and entry filed August 30, 1999, the court of common pleas held that the commission's decision to deny the variance was not improper under Ohio zoning law. The court further held, however, that the ordinances were an unconstitutional infringement on Suburban Lodges' First Amendment rights. In particular, the court found that the regulations were content-based and, as such, could not be a reasonable time, place, and manner restriction on speech. The court further found that the ordinances, as applied to Suburban Lodges' proposed sign, were an invalid regulation of commercial speech. As to this issue, the court specifically held that despite the city's substantial interest in ensuring the safety of motorists and curtailing visual clutter along highways and freeways, "refusing to allow the wording 'Weekly Rates' as two of six words on the sign does not directly advance that interest, nor is the restriction sufficiently narrowly tailored to justify application of the regulation."

It is from this decision of the court of common pleas that the city appeals, raising the following single assignment of error:

"The court of common pleas erred when it determined sections 3375.06(E) and 3379.01(D) of the Columbus Graphics Code are unconstitutional as applied under the First and Fourteenth Amendments."

Through its single assignment of error, the city contends that the trial court erred in holding the two city ordinances unconstitutional under the First and Fourteenth Amendments to the United States Constitution. According to the city, it has a right to limit the text on freeway-oriented signs to the company name, address, product or service, because such limitations are valid time, place, and manner restrictions and otherwise constitute permissible restrictions on commercial speech under *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm. of New York* (1980), 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341, and its progeny. Because we find that the ordinances at issue here are valid restrictions on commercial speech, we need not address whether the ordinances would satisfy the more restrictive time, place, and manner standard generally applicable to noncommercial speech.[1] See, generally, *Queensgate Invest. Co. v. Liquor Control*

---

1. Appellee has not challenged the trial court's decision upholding the decision of the commission on state law grounds; nor does appellee argue that the ordinances are impermissibly

*Comm.* (1982), 69 Ohio St.2d 361, 365, 23 O.O.3d 337, 339–340, 433 N.E.2d 138, 141.

Commercial speech, that which proposes a commercial transaction, is afforded less constitutional protection than other constitutionally guaranteed expression. *United States v. Edge Broadcasting Co.* (1993), 509 U.S. 418, 426, 113 S.Ct. 2696, 2703, 125 L.Ed.2d 345, 354–355; see, also *Bd. of Trustees of the State Univ. of New York v. Fox* (1989), 492 U.S. 469, 477, 109 S.Ct. 3028, 3033, 106 L.Ed.2d 388, 402 ("[o]ur jurisprudence has emphasized that 'commercial speech [enjoys] a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values,' and is subject to 'modes of regulation that might be impermissible in the realm of noncommercial expression.'" Quoting *Ohralik v. Ohio State Bar Assn.* [1978], 436 U.S. 447, 456, [98 S.Ct. 1912, 1918–1919, 56 L.Ed.2d 444, 453.]). Consistent with this general understanding, the United States Supreme Court in *Central Hudson, supra,* set forth the general four-part test for assessing governmental restrictions on commercial speech as distinguished from more fully protected speech. First, only commercial speech that is truthful and not misleading receives First Amendment protection. Second, a restriction on truthful, not misleading commercial, speech must seek to implement a substantial governmental interest. Third, the restriction must directly advance the governmental interest involved. Finally, the restriction must not be more extensive than necessary to serve that interest. *Central Hudson, supra,* at 564, 100 S.Ct. at 2350, 65 L.Ed.2d at 349–350, see, also, *Metromedia, Inc. v. San Diego* (1981), 453 U.S. 490, 507, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800, 814–815; *Rubin v. Coors Brewing Co.* (1995), 514 U.S. 476, 482, 115 S.Ct. 1585, 1589, 131 L.Ed.2d 532, 538–539.

Here, the city concedes that Suburban Lodges' proposed sign (and in particular, its proposed inclusion of pricing information) involves truthful, not misleading, speech. Suburban Lodges also concedes that (as the trial court found) the city's interests in regulating freeway-oriented signs—*i.e.*, traffic safety and curtailing visual clutter—are substantial governmental interests. The parties' dispute, and the crux of this case, involves whether the city's regulations satisfy the third and fourth prongs of the *Central Hudson* test—*i.e.*, whether they directly serve the twin-goals of traffic safety and aesthetics and whether such limitations are not more restrictive than necessary to serve such interests.

As noted above, the trial court held that, as applied to the facts of this case, the regulations' prohibition of the wording Weekly Rates on Suburban Lodges' proposed sign did not directly advance the city's interests in safety and aesthetics

---

overbroad because they potentially regulate noncommercial speech. As such, we address neither issue here.

and that the regulations were not narrowly tailored to justify their application to Suburban Lodges' proposed sign. We find, however, that the trial court erroneously analyzed the regulation as applied to the proposed signs at issue herein determining whether the applicable city ordinances satisfy constitutional muster.

█ A finding that a regulation on commercial speech fails to directly advance a substantial governmental interest and/or is more extensive than necessary to serve such interests may not be based by reference solely to its application to the complaining party's proposed speech. See *Edge Broadcasting, supra*. In *Edge Broadcasting*, the United States Supreme Court upheld a federal statute prohibiting radio stations in non-lottery states from broadcasting lottery advertising. The lower courts had held that the regulation, as applied to a specific radio station in North Carolina (a non-lottery state) that sought to advertise the Virginia lottery, failed the *Central Hudson* test. In particular, the lower courts had found that, because over ninety percent of the radio station's listening audience was in Virginia, application of the regulation to the radio station did not directly advance the asserted governmental interest supporting the regulation of discouraging participation in lotteries in states that prohibited such lotteries. *Id.* at 423–425, 113 S.Ct. at 2701–2703, 125 L.Ed.2d at 353–354.

The Supreme Court reversed, finding that the lower courts' individualistic "as applied" analysis was erroneous under the *Central Hudson* test. As stated by the court, "[i]t is readily apparent that this question [whether the regulation directly advances the governmental interest asserted] cannot be answered by limiting the inquiry to whether the governmental interest is directly advanced as applied to a single person or entity." *Id.* at 427, 113 S.Ct. at 2704, 125 L.Ed.2d at 355–356. Rather, " 'the validity of the regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interest in an individual case.' " *Id.* at 430, 113 S.Ct. at 2705, 125 L.Ed.2d at 357 (quoting *Ward v. Rock Against Racism* [1989], 491 U.S. 781, 801, 109 S.Ct. 2746, 2759, 105 L.Ed.2d 661, 682). Thus, since the federal regulation in general directly advanced the governmental interest in supporting North Carolina's laws making lotteries illegal and in general was not more extensive than necessary, application of the restriction to the specific radio station did not offend the Constitution, even if such governmental interests were only marginally advanced by applying the regulation to the particular radio station at issue. *Id.* at 427–431, 113 S.Ct. at 2703–2706, 125 L.Ed.2d at 355–358.

Other cases are in accord. See *Ohralik, supra* (state may apply prophylactic regulation on commercial speech without proving that state's interests supporting the rule actually were advanced by application of the rule in the particular case); *Lavey v. Two Rivers* (C.A.7, 1999), 171 F.3d 1110, 1115, fn. 18 (noting that under *Edge Broadcasting*, an "as applied" challenge under *Central Hudson* must be to

a broad category of commercial speech and not simply to the application of the regulation to the particular plaintiff's speech).

 Thus, the relevant inquiry in this case is not whether application of the city's ordinances to Suburban Lodges' proposed inclusion of the language "Weekly Rates" directly advances the city's interest in traffic safety and aesthetics, *i.e.*, whether the city can prove that prohibiting this particular sign will have a direct effect on traffic safety and aesthetics. In fact, a court would be hard-pressed to uphold application of any city ordinances to any individual proposed sign under such an analysis, as the effect of any particular sign on traffic safety and aesthetics would likely be de minimis. Rather, the appropriate inquiry under the *Central Hudson* test is whether the city's regulations limiting the language of on-premises signs oriented toward a highway or freeway directly advances the city's interest and whether such regulations are not more restrictive than necessary to serve such purposes.

In this regard, the city argues that the ordinances strike an appropriate balance between the city's interest in reducing visual clutter that could distract drivers and result in traffic accidents and still allow some commercial speech. As such, the city contends, the ordinances further a substantial governmental interest but are not more restrictive than necessary. Suburban Lodges, however, contends that the city has failed to present any evidence to support a finding that its regulations actually further the city's safety and aesthetic goals; that the city's more lenient regulation of temporary signs (including those along highways) and on-premises commercial signs not oriented toward highways undercuts the city's purported interest in traffic safety and aesthetics; and, finally, that if the city were truly interested in traffic safety and visual clutter, the only logical regulation would govern the size and font of letters and number of words but not (as these ordinances do) the type of words.

 The Supreme Court has noted that the third and fourth prongs of the *Central Hudson* analysis "basically involve a consideration of the 'fit' between the legislature's ends and the means chosen to accomplish those ends." *Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico* (1986), 478 U.S. 328, 341, 106 S.Ct. 2968, 2976–2977, 92 L.Ed.2d 266, 281. This fit, however, need not be perfect, but reasonable; one "that represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served,' * * * that employs not necessarily the least restrictive means but * * * a means narrowly tailored to achieve the desired objective." *Fox, supra,* at 480, 109 S.Ct. at 3035, 106 L.Ed.2d at 404.

Applying this reasonable fit standard, the United States Supreme Court in *Metromedia, supra,* upheld a portion of a San Diego ordinance that prohibited all

off-site (*i.e.*, billboard) signs to the extent it applied only to commercial advertising.[2] In so doing, the Supreme Court held that the city's twin goals of traffic safety and aesthetics were unquestionably substantial governmental interests; that the court would not disagree with the common-sense judgments of local lawmakers that billboards are a real and substantial hazard to traffic safety and aesthetically harmful; that the most direct and perhaps the only effective approach to solving the problems created by such billboards was to prohibit them; and that the city had gone no further than necessary in seeking to meet its ends (and in fact had stopped short of fully accomplishing its ends) by not prohibiting all commercial signs in the city. *Id.* at 507–509, 101 S.Ct. at 2892–2893, 69 L.Ed.2d at 814–816.

Significantly, the *Metromedia* court (a four-justice plurality was joined by dissenting Justice Steven on those portions of the opinion relevant here, constituting a five-Justice majority as to the validity of the city's ordinance in its regulation of purely commercial speech) rejected the petitioner's argument that the San Diego ordinance's exclusion of on-premises signs from the general advertising ban undercut the city's purported justification for the regulation because on-premises signs could be just as distracting and just as unattractive as off-site signs. First, the court noted that the regulation's under-inclusiveness did not alter that fact that the off-site advertising ban otherwise advanced the city's safety and aesthetic goals. Second, the city could reasonably believe that off-site advertising, with its changing content, presented a greater threat to the city's goals. Finally, the city was entitled to value one type of commercial speech, on-site advertising, more than another type of commercial speech, off-site advertising. *Id.* at 511–512, 101 S.Ct. at 2894–2895, 69 L.Ed.2d at 817–818. As stated by the court, "[i]t does not follow from the fact that the city has concluded that some commercial interests outweigh its municipal interests in this context that it must give similar weight to all other commercial advertising." *Id.* at 512, 101 S.Ct. at 2894–2895, 69 L.Ed.2d at 818.

Following the analysis in *Metromedia,* courts have routinely upheld restrictions (including bans) on commercial advertising signs in the interests of traffic safety and aesthetics. See, e.g., *Lavey, supra* (regulations governing number, size, location of signs, and distinguishing between on-site and off-site signs); *Southlake Prop. Assoc., Ltd. v. City of Morrow, Georgia* (C.A.11, 1997), 112 F.3d 1114 (city ordinance prohibiting all billboards); *Ackerley Communications of the*

---

2. The court ultimately declared those portions of the San Diego ordinance affecting noncommercial speech invalid and remanded the case for consideration of whether the invalid provisions (those regulating noncommercial speech) could be severed from the valid commercial speech provision.

*Northwest, Inc. v. Krochalis* (C.A.9, 1997), 108 F.3d 1095 (billboard regulation designed to gradually reduce number of billboards in city).

■ While the regulations challenged here involve on-premises advertising, we find that the reasoning of the *Metromedia* court upholding the San Diego ban on off-site advertising applies equally well to the city's regulation of on-premises signs oriented toward a freeway or highway. Like the court in *Metromedia,* we will not second-guess the city's common-sense conclusion that limiting the text of advertising signs generally reduces visual clutter along the highway and reduces the possibility of traffic accidents. Evidentiary proof in this regard is not constitutionally required. See *Ackerley Communications, supra,* at 1099–1100 (Seattle's billboard regulation, "enacted to further the city's interest in aesthetics and safety, is a constitutional restriction on commercial speech without detailed proof that the billboard regulation will in fact advance the city's interests"). Nor can the ordinances be considered more restrictive than necessary because, as in *Metromedia,* the city has stopped well short of a complete ban on all such signs by allowing commercial entities to advertise their name, location, and principal product without restriction.

■ Likewise, we reject Suburban Lodges' argument that an alternate regulation limiting the size of letters and number of words per sign (rather than the type of information on such sign) would be a less restrictive, but as effective, regulation. First, as noted above, a valid commercial speech regulation need not be the least restrictive alternative nor a perfect one. Second, a regulation restricting the number of words and size of letters is not inherently less restrictive than a regulation limiting the type of information that may be contained on a sign—some commercial advertisers (like Suburban Lodges here) may simply find one type of regulation more restrictive than the other. Moreover, the city could reasonably conclude that its goals are more directly advanced by not simply limiting the size of letters and number of words on a sign but by limiting the amount and/or type of *information* contained therein. In other words, the city could reasonably conclude that it is the amount of information in a sign (and not simply the number of letters or words in a sign) that is distracting to motorist.

■ By the same token, we also reject Suburban Lodges' contention that the validity of the city ordinances is undercut by the city's allowance of temporary real estate and construction signs along the highways and freeways without limiting the text of such signs and by the city's failure to enact text limitations on signs along other, more visually cluttered streets in the city. We find no logical difference, however, between appellee's argument in this regard and that rejected by the *Metromedia* court that the San Diego ordinance was invalid because it was

impermissibly under-inclusive. By its very terms, the interest to be protected by the city's ordinances at issue here is traffic safety and aesthetics *along the city's highways and freeways*. Thus, the fact that the city has chosen not to enact similar ordinances along other city streets does not make the regulations any less effective in their intended purpose of reducing visual clutter along highways and freeways. Likewise, the city could reasonably conclude that temporary real estate and construction signs (because of their temporary nature) create less harm to the long-term goals of highway aesthetics and safety and that the short-term necessity of communicating such information is more important than limiting visual clutter in this regard. As the *Metromedia* court noted, the city may constitutionally choose to value one type of commercial speech over another.

The city ordinances at issue here are also readily distinguishable from the regulation declared unconstitutional in *Cincinnati v. Discovery Network, Inc.* (1993), 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99, a case extensively relied upon by Suburban Lodges. In *Discovery Network,* the United States Supreme Court invalidated a Cincinnati ordinance that banned the distribution of commercial publications through freestanding news racks on public property but allowed the sale of newspapers through such news racks. The court held that, given the regulation's minimal impact on the overall number of news racks on the city's sidewalk (only sixty-two out of two thousand news racks in the city were affected by the ordinance), the city failed to establish a "reasonable fit" between the regulation and the city's legitimate goals (safety and aesthetics), at least not one sufficient to justify the regulation's discrimination against commercial speech. As noted by the court, "distinction [between commercial and noncommercial news racks] * * * bears no relationship *whatsoever* to the particular interests that the city has asserted." (Emphasis *sic*.) *Id.* at 424, 113 S.Ct. at 1514, 123 L.Ed.2d at 113. In so finding, however, the court specifically noted that, unlike the Cincinnati ordinance (which discriminated between commercial and noncommercial speech), the San Diego ordinance found valid in *Metromedia* discriminated between only two types of commercial speech, *i.e.,* on-site and off-site advertising. *Id.* at 425, 113 S.Ct. at 1514, 123 L.Ed.2d at 113, fn. 20. Unlike the Cincinnati ordinance found invalid in *Discovery Network,* the city ordinances here do not exempt the vast majority of on-premises signs along freeways and highways from regulation. Similarly, like the ordinance at issue in *Metromedia,* the city ordinances here distinguish between only types of commercial speech.

Finally, in upholding the city ordinances at issue here, we reject Suburban Lodges' suggestion that, under *Metromedia,* on-premises signs are afforded greater constitutional protection than off-site signs. The *Metromedia* court simply recognized that regulations dealing exclusively with off-site signs are not impermissibly under-inclusive, in part, because local governments can reasonably

conclude that off-site advertising (with its changing content) may present a more acute problem than does on-site advertising. Nothing in *Metromedia* suggests, however, that on-premises signs are not, themselves, susceptible to the same harmful characteristics, and Suburban Lodges has cited no authority specifically holding that the First Amendment mandates favorable treatment of on-premises commercial signs, let alone the type of on-premises sign regulated here—those oriented toward a highway or freeway.

For the foregoing reasons, we find that C.C. 3375.06(E) and 3379.01(D), as applied to commercial advertising signs, including that proposed by Suburban Lodges, do not violate the Free Speech Clause of the First Amendment to the United States Constitution. Accordingly, the judgment of the Franklin County Court of Common Pleas is reversed.

*Judgment reversed.*

PETREE, J., concurs.

GREY, J., dissents.

LAWRENCE GREY, J., retired, of the Fourth Appellate district, was assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.