JOURNAL ENTRY AND OPINION
Genesis Outdoor, Inc. (Genesis) appeals from a judgment of the Cuyahoga County common pleas court which sustained the Cuyahoga Heights Board of Zoning Appeals denying its application to erect a billboard in the village. On appeal, Genesis assigns the following as error for our review:
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT ISSUING A WRITTEN OPINION TO SUPPORT ITS DECISION IN THE O.R.C. CHAPTER 2506 APPEAL.
 II. THE TRIAL COURT ERRED IN AFFIRMING THE DECISION OF THE VILLAGE OF CUYAHOGA HEIGHTS BOARD OF ZONING APPEALS AS A MATTER OF LAW, AS IT WAS UNCONSTITUTIONAL, ILLEGAL, ARBITRARY, CAPRICIOUS, UNREASONABLE, OR UNSUPPORTED BY THE PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE AS A MATTER OF LAW.
Having reviewed the arguments of the parties and the pertinent law, we affirm the judgment of the trial court.
This appeal concerns the constitutionality of an ordinance passed by the Village of Cuyahoga Heights, Ohio (Village) restricting the erection of billboards in the Village. Genesis is a billboard sign company based in Arizona, doing business in Ohio since 1990. Genesis wanted to erect a billboard on a section of property owned by Conrail in the Village. The proposed site is on the southern most railroad trestle adjacent to the west side of Interstate 77, a one-sided sign facing northbound traffic. This would be the only billboard on that side of the freeway. Genesis entered into a lease with Conrail's leasing agent, TDI, and obtained a sign permit from the Ohio Department of Transportation. However, Genesis claims when it attempted to obtain the requirements for a permit, the Village did not respond. The billboard Genesis sought to erect was 14 by 48 feet, or 672 square feet. According to ordinance 1482.03, no sign can have a surface of more than 25 square feet or exceed 10 feet high. Therefore, Genesis would also have to be granted a height and size variance to accommodate the billboard.
In the summer of 1999, due to concerns about the recent increases in the number of billboards applied for and constructed, the orderly appearance of the Village, and property values, the Village Council enacted a six month moratorium on the issuance of billboard permits. In December, the moratorium was extended for an additional three months. Genesis applied for the permit during the moratorium, on February 8, 2000.
On February 22, 2000, Norman J. Cassini, in his capacity as the Village Architect and the Village Building Commissioner, denied Genesis' application because, "[p]ursuant to Cuyahoga Heights Building and Housing Code Section 1482.02, 1482.03 and 1248.02 . . . Such a sign does not meet the Cuyahoga Heights code requirements."
On March 8, 2000, Village Council passed Ordinance 2000-15, which amended Chapter 1482 of the Codified Ordinances to establish standards for industrial signs and to prohibit signboards promoting offsite advertising in the Village. As amended, section 1482.01 prohibited signboards promoting off-site advertising.
On March 14, 2000, Genesis appealed the commissioner's decision to the Board of Zoning and requested a hearing on the matter. Thereafter, on July 5, 2000, a hearing was held where Genesis presented the testimony of Kyle Gallett, Vice President of Genesis, and Jonathan Wocher, an urban planning consultant.
Gallett testified he was aware the size and height of the billboard required variances; however, the size chosen was the industry standard. He further testified Genesis chose the location because it liked it, was familiar with the owner's leasing agent, TDI, and did not want to request a permit from the owner of the sewage treatment plant nearby. Additionally, Gallett stated prior to filing the application with the Village, Genesis had obtained the necessary ODOT permit which indicated the proposed billboard site complied with the measurement requirements under the state regulations. On cross-examination, Gallett testified to his knowledge, there had been no studies done indicating that motor vehicle accidents were being caused by drivers looking at billboards.
Wocher testified because the permit application had been filed on February 8, 2000 and the refusal had been granted on February 22, 2000, both of those events preceded the formal adoption of ordinance 2000-15 on March 8, 2000; therefore, the BZA's review should be guided by the regulations that existed in the pre-2000 version of the ordinance. Accordingly, he opined the threshold issue before the Board was whether the proposed use was a permitted accessory use in the industrial district pursuant to Section 1248.02. He stated under the zoning law in effect at the time the application was made, a billboard was a permitted accessory use, as indicated by the variances issued to Cleveland Outdoor in 1998 and 1999.
The Village offered the testimony of its Building Commissioner, Norman J. Casini, who testified the billboard described by the application did not comply with the size ordinance and necessitated a variance. Additionally, he stated no application for a billboard on the west side of I-77 had ever been approved.
David Hartt, a planning and zoning expert retained by the Village, testified that Cuyahoga Heights Ordinance 2000-15 applied to Genesis' variance request and that Genesis needed both a use variance from the prohibition against such billboards and a variance with respect to its size.
During the hearing, Board member Renato Contipelli engaged in the following dialogue with Gallett:
 MR. RENATO CONTIPELLI: Has your company ever done any studies concerning how many billboards per mile is a safe condition for freeway? I mean we're talking right now we've already got six billboards within a half mile, you're going to put them on the other side, aren't you confusing motorists here? They're going to be driving, trying to look at this side, this side. I think we're causing safety concerns. They're trying to read both sides of the road then going 60, 70 miles an hour.
Contipelli wanted Genesis to present testimony from ODOT regarding the safety of multiple billboards. Contipelli also offered an explanation for the Board's reluctance to grant the permit and variances and for the new ordinance. He stated:
 MR. RENATO CONTIPELLI: You're aware we're a chartered village and we basically — and it's your opinion then that being that we basically control our own destiny in this village, that at times in the future we may need to change zoning and change some of our practices to accommodate the way life-styles have changed in this village?
* * *
 Your comment several times was this is the character of this corridor. Maybe the village is trying to change that character, maybe we've established a character that doesn't want to go any further there. I mean we start putting billboards down the east side of 77 going south or north, facing north or south, you're going to have a tunnel effect there. It's kind of nice coming down that hill as you come underneath the overpass bridge, it's wide open, you see Independence, you see the wastewater treatment plant, you see Brooklyn Heights, you see everything. Maybe this town wants to keep it that way. (Emphasis added.)
The foregoing statement sums up the struggle between the Village and Genesis in this court's opinion. That is, the Village's desire to keep its portion of I-77 aesthetically pleasing and Genesis' right to freedom of speech.
This court's standard of review in an administrative appeal pursuant to R.C. 2506 is more limited than that of the trial court.[1]
The trial court must consider the entire administrative record, evaluate the credibility of the witnesses, and weigh the evidence in order to determine whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.[2] This court, however, must affirm the judgment of the trial court unless we determine the it is not supported by a preponderance of reliable, probative and substantial evidence.[3] In other words, we must determine whether the trial court abused its discretion.[4]
Genesis argues the Village ordinances pertaining to billboards in effect at the time Genesis filed its application and as enacted on March 8, 2000 are unconstitutional on their face and as applied to Genesis. At the outset, we note "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective and definite standards to guide the licensing authority, is unconstitutional."[5] Further, "a law cannot condition the free exercise of First Amendment rights on the unbridled discretion of government officials."[6]
Commercial speech is afforded less constitutional protection than other constitutionally guaranteed expression.[7]
Accordingly, the United States Supreme Court in Central Hudson Gas Electric Corp. v. Public Service Comm. of N.Y.[8] promulgated a four-part test for assessing governmental restrictions on commercial speech as distinguished from more fully protected speech.[9] First, only commercial speech that is truthful and not misleading receivesFirst Amendment protection. Second, a restriction on truthful, not misleading commercial speech must seek to implement a substantial governmental interest. Third, the restriction must directly advance the governmental interest involved. Finally, the restriction must not be more extensive than necessary to serve that interest.[10]
The truthfulness of the content of the billboard is not at issue in this case. Additionally, Genesis acknowledges the Village's interests in traffic safety and aesthetics are substantial governmental interests. However, the parties dispute, and the crux of this case, involves whether the Village's ordinances satisfy the third and fourth prongs of the Central Hudson test — "i.e., whether they directly serve the twin-goals of traffic safety and aesthetics and whether such limitations are not more restrictive than necessary to serve such interests."[11] Therefore, the appropriate inquiry under the CentralHudson test is whether the Village's ordinances directly advanced its interest and whether the ordinances are not more restrictive than necessary to serve such purposes.
The Village argues the ordinances protect its interest in maintaining the safety of drivers because they could be distracted when reading billboards on both sides of I-77 and in preserving an aesthetically pleasing freeway. As such, the Village contends the ordinances further a substantial governmental interest but are not more restrictive than necessary. Genesis, however, contends the Village's city-wide ban on billboards is not narrowly tailored to achieve any proffered governmental interest. It further argues the Village discriminated against Genesis because it previously allowed other property owners to construct billboards.
In Suburban Lodges[12], the court stated:
 The Supreme Court has noted that the third and fourth prongs of the Central Hudson
analysis "basically involve a consideration of the `fit' between the legislature's ends and the means chosen to accomplish those ends." This fit, however, need not be perfect, but reasonable; one "that represents not necessarily the single best disposition but one whose scope is `in proportion to the interest served,' * * * that employs not necessarily the least restrictive means but * * * a mean narrowly tailored to achieve the desired objective." (Citations omitted.)
In Metromedia[13], the Supreme Court upheld a portion of a San Diego ordinance that prohibited all off-site signs to the extent it applied only to commercial advertising. The Court held the city's twin goals of traffic safety and aesthetics were unquestionably substantial governmental interest; that the court would not disagree with the "common-sense judgments" of local lawmakers that billboards are a real and substantial hazard to traffic safety and aesthetically harmful; that the most direct and perhaps the only effective approach to solving the problems created by such billboards was to prohibit them; and that the city had gone no further than necessary in seeking to meet its ends by not prohibiting all commercial signs in the city.[14] Following the analysis in Metromedia, courts have routinely upheld restrictions on commercial advertising signs in the interests of traffic safety and aesthetics.[15]
Like the court in Metromedia, we will not second-guess the Village's common-sense conclusion that limiting the number of billboards and restricting their placement to one side of the freeway reduces visual clutter and the possibility of traffic accidents. Evidentiary proof in this regard is not constitutionally required.[16]
For the foregoing reasons, we conclude the ordinances do not violate the free speech clause of the First Amendment to the United States Constitution. As such, we find the trial court did not abuse its discretion when it affirmed the Board of Zoning's decision denying Genesis' permit to erect a billboard.
On appeal, Genesis also argues the court erred when it failed to issue a written opinion supporting its affirmation of the Board of Zoning Appeals which denied Genesis a permit to construct a billboard. The record reveals the trial court issued a standard half sheet affirming the Board's decision.
In 3910 Warensville Center, Inc. v. City of Warrensville Heights,[17] the court noted R.C. 2506.04 provides the proper scope of review by the common pleas court in a procedure upon appeal from agencies of political subdivisions:
 "The court may find that the order, adjudication or decision is unconstitutional, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication or decision or remand the cause to the officer or body appealed from with instructions to enter an order consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law pursuant to sections 2505.01 to 2505.45, inclusive of the Revised Code.
We find no support in the state for Genesis' proposition that the common pleas court is required to issue written factual findings in such appeals. We conclude the trial court's failure to specify the basis of its affirmance does not constitute non-compliance with the statute. Accordingly, appellant's assignments of error are overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., and FRANK D. CELEBREZZE, JR., J., (CONCURS INJUDGMENT ONLY.)
[1] Smith v. Granville Twp. Bd. of Trustees, (1998), 81 Ohio St.3d 608,612, 693 N.E.2d 219.
[2] Henley v. Youngstown Bd. of Zoning Appeals (2000), 90 Ohio St.3d 142,147, 735 N.E.2d 433.
[3] Kisil v. City of Sandusky (1984), 12 Ohio St.3d 30, 34,465 N.E.2d 848.
[4] OSWGI, L.P. v. City of North Royalton Board of Zoning Appeals
(1996), 113 Ohio App.3d 268, 271, 680 N.E.2d 1037.
[5] Shuttlesworth v. City of Birmingham (1969), 394 U.S. 147, 150-51,89 S.Ct. 935, 938.
[6] Gaudiya Vaishnava Society v. City and County of San Franciscso (9th Cir. 1990), 952 F.2d 1059, 1065, (citing City of Lakewood v. Plain DealerPublishing Co. (1988), 486 U.S. 750, 755, 108 S.Ct. 2138, 2143, cert.denied, (1992) 504 U.S. 914, 112 S.Ct. 1951).
[7] United States v. Edge Broadcasting Co. (1993), 509 U.S. 418,426, 113 S.Ct. 2696.
[8] (1980), 447 U.S. 557, 100 S.Ct. 2343.
[9] See, Suburban Lodges of America, Inc. v. City of Columbus GraphicsCommission (2000), 145 Ohio App.3d 6, 761 N.E.2d 1060.
[10] Cental Hudson, supra, at 564; see, also, Metromedia, Inc.v. City of San Diego (1981), 453 U.S. 490, 507, 101 S.Ct. 2882.
[11] Suburban Lodges, supra, at 8-9.
[12] 145 Ohio App.3d at 13-14.
[13] 453 U.S. 490.
[14] Id. at 507-09.
[15] See, e.g., Ackerley Communications of the Northwest Inc. v.Krochalis (C.A.9, 1997), 108 F.3d 1095 (billboard regulation designed to gradually reduce number of billboards in city).
[16] Id. At 1099-1100 (Seattle's billboard regulation, "enacted to further the city's interest aesthetics and safety, is a constitutional restriction on commercial speech without detailed proof that the billboard regulation will in fact advance the city's interests").
[17] (1984), 20 Ohio App.3d 220, 485 N.E.2d 824.