108 F.3d 1095
 97 Cal. Daily Op. Serv. 1728, 97 Daily Journal
D.A.R. 3259
ACKERLEY COMMUNICATIONS OF THE NORTHWEST INC., a
corporation, Plaintiff-Appellant,
v.
R.F. KROCHALIS, Director, Seattle Department of Construction
and Land Use; Department of Construction and Land Use,
Seattle, an Agency of the City of Seattle, Washington; City
of Seattle, a Municipal Corporation, Defendants-Appellees.
 No. 95-36211.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 4, 1997.
Decided March 7, 1997.
 
 Andrew L. Frey, Mayer, Brown, & Platt (argued), Washington, D.C.; Paul R. Taylor, Byrnes & Keller, Seattle, Washington; and Darrin N. Sacks, Rubin, Winston, Diercks, Harris & Cooke, Washington, D.C., for the plaintiff-appellant.
 Eleanore S. Baxendale, Assistant City Attorney, Seattle, Washington, for the defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington, William L. Dwyer, District Judge, Presiding. D.C. No. CV-94-00487-WLD.
 Before: BROWNING, RYMER, and T.G. NELSON, Circuit Judges.
 OPINION
 RYMER, Circuit Judge.
 
 
 1
 This appeal requires us to decide whether Seattle's regulation limiting the construction and relocation of billboards passes constitutional muster as a matter of law under Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), without detailed proof that the billboard regulation will in fact advance the city's interests in traffic safety and esthetics.
 
 
 2
 Ackerley Communications of the Northwest, Inc., which is in the business of disseminating commercial and public service messages on outdoor advertising signs erected on property leased from private owners, appeals summary judgment in favor of the City of Seattle, its Department of Construction, and R.F. Krochalis, the Department's Director, on its claim that Seattle Municipal Ordinance 116780, prohibiting the construction and relocation of billboards except in certain circumstances, impermissibly restricts commercial speech under the First Amendment. The district court held that Metromedia controls, and we agree. Ackerley contends that the Court's more recent decisions require a searching judicial review of all restrictions on commercial speech, and that Seattle had to (but did not) show that its ordinance in fact advances its goals to a significant degree. However, it is not for us to overrule Supreme Court authority that is squarely on point. Therefore, as we have jurisdiction under 28 U.S.C. § 1291, we affirm.
 
 
 3
 * The City of Seattle has banned the construction of new billboards and regulated the relocation of existing billboards since 1977.[1] Concerned about proliferation despite the cap on legal billboards, the Seattle City Council adopted Municipal Ordinance 116780[2] in 1993 to tighten restrictions on relocation. It did so in the belief that:
 
 
 4
 because the proliferation and location of billboards in the City can contribute to visual blight, traffic hazards and a reduction of property values, it is in the public interest to further regulate the spacing, dispersion, height, size, location and relocation of billboards.
 
 
 5
 Addendum 1, p. 1.
 
 
 6
 The practical effect of the ordinance will be a gradual net reduction in the number of billboards in the city. This reduction will occur because the ordinance permits only the relocation or reconstruction of signs that do not currently conform to the Land Use Code. Conforming signs may not be relocated. Thus, whenever Ackerley loses its lease on property on which a conforming sign now sits, it will lose the right to maintain that billboard forever. Because Seattle's Sign Code prohibits the construction of new billboards, the gradual loss of leases to property accommodating conforming signs will reduce the overall number of billboards in the city.
 
 
 7
 Both parties offered evidence about whether billboards can be traffic hazards, whether they contribute to visual blight, and whether they reduce property values. But the district court relied on Metromedia to hold that no trial was necessary on whether Ordinance 116780 passes the Central Hudson[3] test as applied to billboard regulation.[4] Since the cases Ackerley relied on involved other types of expression, the court granted Seattle's motion for summary judgment.
 
 II
 
 8
 Ackerley urges us to reverse because Seattle made no factual showing that the ordinance advances its goals to a material degree. First, it suggests that Metromedia is distinguishable because it came up on stipulated facts and nothing in the record cast doubt on the city's conclusion about the safety or esthetic effects of billboards, whereas here, Ackerley adduced evidence which, it says, does raise doubts about the reasonableness of Seattle's judgment. More substantively, Ackerley submits that since Metromedia, the Court has imposed a greater evidentiary burden on a municipality trying to justify a restriction on commercial speech, see, e.g., 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996); Rubin v. Coors Brewing Co., 514 U.S. 476, 115 S.Ct. 1585, 131 L.Ed.2d 532 (1995); Edenfield v. Fane, 507 U.S. 761, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993); and City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), and that we should follow suit in this case.
 
 
 9
 We start with Metromedia, where the Supreme Court considered a First Amendment challenge to San Diego's ban on offsite billboards. Like Seattle, San Diego enacted its ordinance "to eliminate hazards to pedestrians and motorists brought about by distracting sign displays" and "to preserve and improve the appearance of the City." 453 U.S. at 490, 101 S.Ct. at 2883. The Court applied the Central Hudson test, though there was little controversy over the application of the first, second and fourth criteria. As the Court explained:
 
 
 10
 There is no suggestion that the commercial advertising at issue here involves unlawful activity or is misleading. Nor can there be substantial doubt that the twin goals that the ordinance seeks to further--traffic safety and the appearance of the city--are substantial governmental goals. It is far too late to contend otherwise with respect to either traffic safety or esthetics. Similarly, we reject appellants' claim that the ordinance is broader than necessary and, therefore, fails the fourth part of the Central Hudson test. If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them. The city has gone no further than necessary in seeking to meet its ends.
 
 
 11
 Id. at 507-08, 101 S.Ct. at 2892-93 (citations and footnote omitted).
 
 
 12
 Turning to the third criterion--whether the ordinance directly advances governmental interests in traffic safety and in the appearance of the city--the Court explicitly rejected Metromedia's argument that the record was inadequate to show any connection between billboards and traffic safety. Instead, it affirmed the California Supreme Court's opinion, which held " 'as a matter of law that an ordinance which eliminates billboards designed to be viewed from streets and highways reasonably relates to traffic safety.' " Id. at 508, 101 S.Ct. at 2893 (quoting Metromedia, Inc. v. City of San Diego, 26 Cal.3d 848, 859, 164 Cal.Rptr. 510, 514, 610 P.2d 407, 412 (1980)). Noting that many other courts agreed that "a legislative judgment that billboards are traffic hazards is not manifestly unreasonable and should not be set aside," the plurality stated:
 
 
 13
 We likewise hesitate to disagree with the accumulated, common-sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety. There is nothing here to suggest that these judgments are unreasonable. As we said in a different context: "We would be trespassing on one of the most intensely local and specialized of all municipal problems if we held that this regulation had no relation to the traffic problem of New York City. It is the judgment of the local authorities that it does have such a relation. And nothing has been advanced which shows that to be palpably false."
 
 
 14
 Id. at 509, 101 S.Ct. at 2893 (footnote omitted) (quoting Railway Express Agency, Inc. v. New York, 336 U.S. 106, 109, 69 S.Ct. 463, 465, 93 L.Ed. 533 (1949)).
 
 
 15
 The Court reached a similar result with respect to whether the San Diego ordinance advanced the city's esthetic interests:
 
 
 16
 It is not speculative to recognize that billboards by their very nature, wherever located and however constructed, can be perceived as an "esthetic harm." San Diego, like many States and other municipalities, has chosen to minimize the presence of such structures. Such esthetic judgments are necessarily subjective, defying objective evaluation, and for that reason must be carefully scrutinized to determine if they are only a public rationalization of an impermissible purpose. But there is no claim in this case that San Diego has as an ulterior motive the suppression of speech, and the judgment involved here is not so unusual as to raise suspicions in itself.
 
 
 17
 Id. at 510, 101 S.Ct. at 2893-94 (footnotes omitted).
 
 
 18
 Thus, the Court concluded that the ordinance did not fail directly to advance substantial government interests, and that it met the constitutional requirements of Central Hudson.[5] Because Seattle's ordinance is substantially similar to San Diego's, and Ackerley's challenge is virtually identical to Metromedia's, it follows that Seattle's ordinance is likewise constitutional unless Ackerley is correct that Metromedia is no longer good law.
 
 
 19
 Ackerley argues that the Court's application of Central Hudson to other types of commercial speech restrictions[6] has somehow undermined Metromedia 's vitality with respect to billboards. However, the Court itself has never said so. To the contrary, the Court has continued to rely on its conclusion in Metromedia that a city's interest in avoiding visual clutter suffices to justify a prohibition of billboards, and it expressly reaffirmed that conclusion in Members of the City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 807, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984) (upholding a Los Angeles ordinance that prohibited the posting of signs on public property).
 
 
 20
 Justice White's opinion for the Court in Metromedia explained that "[e]ach method of communicating ideas is 'a law unto itself' and that law must reflect the 'differing natures, values, abuses and dangers' of each method. We deal here with the law of billboards." 453 U.S. at 501, 101 S.Ct. at 2889 (quoting Kovacs v. Cooper, 336 U.S. 77, 97, 69 S.Ct. 448, 459, 93 L.Ed. 513 (1949)). That law is binding on us, for as we have been instructed:
 
 
 21
 [W]here a Supreme Court precedent "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls," leaving to the Supreme Court "the prerogative of overruling its own decisions."
 
 
 22
 Carlo v. City of Chino, 105 F.3d 493, 499 (9th Cir.1997) (quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 1922, 104 L.Ed.2d 526 (1989)).
 
 
 23
 Therefore, we hold that Metromedia continues to control the regulation of billboards. See Outdoor Sys., Inc. v. City of Mesa, 997 F.2d 604, 610 (9th Cir.1993) (noting that Metromedia remains the leading decision in the field and upholding a restriction on offsite billboards); National Advertising Co. v. City of Orange, 861 F.2d 246, 248 (9th Cir.1988) (holding that city may prohibit commercial billboards entirely in the interests of traffic safety and aesthetics); cf. Desert Outdoor Advertising v. Moreno Valley, 103 F.3d 814 (9th Cir. Dec.20, 1996) (relying on Metromedia but overturning summary judgment in favor of city that made no effort to show that it enacted its billboard ordinance to further any interest in esthetics or safety). As a matter of law Seattle's ordinance, enacted to further the city's interest in esthetics and safety, is a constitutional restriction on commercial speech without detailed proof that the billboard regulation will in fact advance the city's interests.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 Ackerley filed suit challenging the ban on new billboard construction, but the parties reached a settlement in 1980 under which Ackerley agreed to remove some of its signs permanently and to remove others in exchange for relocation rights. The city adopted a new ordinance in 1980 that preserved the ban on new billboards but granted the relocation rights that had been extended to Ackerley in the settlement agreement to all billboard companies. In 1986, Seattle adopted a new Sign Code for all signs, including billboards. As the Code explains:
 The intent of the standards in this chapter is:
 A. To encourage the design of signs that attract and invite rather than demand the public's attention, and to curb the proliferation of signs;
 B. To encourage the use of signs that enhance the visual environment of the city;
 C. To promote the enhancement of business and residential properties and neighborhoods by fostering the erection of signs complementary to the buildings and uses to which they relate and which are harmonious with their surroundings;
 D. To protect the public interest and safety; and
 E. To protect the right of business to identify its premises and advertise its products through the use of signs without undue hindrance or obstruction.
 SMC 23.55.001, Addendum 2.
 
 
 [2]
 The ordinance provides that an off-premises advertising sign may be relocated or reconstructed only if it was lawfully erected but is now located on a site or in a zone where it is no longer permitted under the Land Use Code; the relocated sign will conform with the Land Use Code at its new location; the construction permit for the relocated sign is issued during the pendency of the demolition permit for the existing sign; the relocated sign face is not increased in size; and the sign is relocated to an area with the same or more intensive zoning. See Seattle Municipal Code § 23.55.014. The ordinance also imposes new requirements governing the spacing and dispersion of billboards, and requires that billboard faces be reported annually and display registration numbers
 
 
 [3]
 Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York, 447 U.S. 557, 564, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980). In Central Hudson the Court adopted a four-part test for determining the validity of government restrictions on commercial speech: "(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective." Metromedia, 453 U.S. at 507, 101 S.Ct. at 2892 (summarizing Central Hudson, 447 U.S. at 563-66, 100 S.Ct. at 2350-51)
 
 
 [4]
 The district court also held that, to the limited extent the billboard restriction might impinge on noncommercial speech, the ordinance meets the test set out in Outdoor Systems, Inc. v. City of Mesa, 997 F.2d 604 (9th Cir.1993), because the ordinance is content neutral, is narrowly tailored to serve a significant government interest, and alternative channels for communication are unimpaired and available. Beyond the issue now appealed, the court ordered judgment entered in Ackerley's favor on several of Ackerley's other claims (including the Seattle Code provisions limiting on-premises signs to commercial messages) and dismissed the remaining counts on grounds that are not appealed
 
 
 [5]
 Although the Court's judgment was announced in a plurality opinion, seven Justices agreed that San Diego's legislative judgment that billboards contribute to traffic hazards and visual blight sufficed to justify a complete ban on offsite commercial billboards. See Metromedia, 453 U.S. at 510, 101 S.Ct. at 2893-94 (plurality); id. at 549-53, 101 S.Ct. at 2913-16 (Stevens, J., dissenting in part); id. at 560-61, 101 S.Ct. at 2919-20 (Burger, C.J., dissenting); id. at 570, 101 S.Ct. at 2924-25 (Rehnquist J., dissenting)
 
 
 [6]
 See, e.g., 44 Liquormart, 517 U.S. at ---- - ----, 116 S.Ct. at 1509-10 (striking down ban on alcohol price advertising because evidence did not show that ban would significantly reduce alcohol consumption); Florida Bar v. Went for It, Inc., 515 U.S. 618, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) (upholding Florida Bar rule prohibiting targeted direct-mail solicitations to accident victims because statistical data and anecdotal evidence submitted by Bar demonstrated that solicitation contributed to flagging reputation of lawyers); Rubin, 514 U.S. at ---- - ----, 115 S.Ct. at 1592-93 (ban on displays of alcohol content on beer labels is an "irrational" means to prevent alcohol strength wars, given that manufacturers could still include alcohol content in advertising); Edenfield, 507 U.S. at 770-71, 113 S.Ct. at 1800 (invalidating State Board of Accountancy rule forbidding in-person solicitation by CPAs because Board did not submit any evidence showing how ban would advance its interests in preventing fraud); Discovery Network, 507 U.S. at 424, 113 S.Ct. at 1514 (finding no fit between city goals and chosen means when "commercial handbills," which city sought to ban in the interest of esthetics, posed the same or less of a problem than non-commercial newsracks)