**CENTER FOR BIO–ETHICAL REFORM, INC., and Gregg Cunningham, Plaintiffs,**

v.

**CITY AND COUNTY OF HONOLULU, a municipal entity, Peter Carlisle, in his official capacity as the City and County of Honolulu Prosecuting Attorney, Lee D. Donohue, in his official capacity as Chief of Police, Honolulu Police Department, Defendants.**

No. CV 03–00154DAEBMK.

United States District Court, D. Hawai'i.

Nov. 9, 2004.

Robert K. Matsumoto, Honolulu, HI, Robert J. Muise, Thomas More Law Center, Ann Arbor, MI, for Center for Bio–Ethical Reform Inc., Gregg Cunningham, plaintiffs.

Gregory J. Swartz, Office of Corporation Counsel–Honolulu, HI, Jon M. Van Dyke, Corporation Counsel, Honolulu, HI, for Honolulu, City and County of a municipal entity, Peter Carlisle, in his official capacity as the City and County of Honolulu Prosecuting Attorney, Lee D. Donohue, in his official capacity as Chief of Police, Honolulu Police Department, Boisse P. Correa, in his official capacity as Chief of Police, Honolulu Police Department, successor to Lee D. Donohue, defendants.

Guy P.D. Archer, Honolulu, for Outdoor Circle, the, amicus.

*ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

DAVID ALAN EZRA, Chief Judge.

The Court heard Plaintiffs' Motion for Summary Judgment and Defendants' Motion For Summary Judgment on November 8, 2004. Robert J. Muise, Esq., and Robert K. Matsumoto, Esq., appeared at the hearing on behalf of Plaintiffs. Gregory J. Swartz, Esq., and Jon Van Dyke, Esq., appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiffs' Motion for Summary Judgment.

## BACKGROUND

Plaintiff Center for Bio–Ethical Reform ("CBR") is a pro-life/anti-abortion advocacy group that campaigns to raise public support for legislation outlawing abortion. Plaintiff Cunningham is the executive director of CBR. To communicate its anti-abortion message in heavily populated areas, CBR flies airplanes towing banners that are visible to the crowds below. These aerial tow banners are 100 feet long, and CBR uses them to display very large, graphic, color photographs of aborted fetuses. (Pl. Concise Statement of Facts, ¶ 5.) CBR has employed this publicity tactic in 6 states. Through the use of aerial tow-banner operations, Plaintiffs estimate that they are able to communicate their anti-abortion message to hundreds of thousands of people by simply displaying one banner for approximately five hours. (Compl., ¶ 19.)

Revised Ordinances of Honolulu § 40–6.1 prohibits the use of "any type of aircraft or other self-propelled or buoyant airborne object" to "display in any manner or for any purpose whatsoever any sign or advertising device." A "sign or advertising device" is defined as including "a poster, banner, writing, picture, painting, light, model, display, emblem, notice, illustration, insignia, symbol or any other form of advertising sign or device." Honolulu Rev.

Ord. § 40–6.1(a). The section contains an exception, however, that allows "an identifying mark, trade name, trade insignia, or trademark on the exterior of an aircraft or self-propelled or buoyant airborne object if the displayed item is under the ownership or registration of the aircraft's or the airborne object's owner." Honolulu Rev. Ord. § 40–6.1(b)(1).

Plaintiffs assert that, because the ordinance prevents them from flying their aerial tow banners over the beaches of Honolulu, it violates their rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Specifically, Plaintiffs' complaint asserts three claims against the constitutionality and enforceability of the statute. Plaintiffs' first and second claims are asserted under 42 U.S.C. § 1983 for violation of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs assert that because the mainstream media will not carry their provocative photographs, they are forced to seek alternative modes of communication, and these aerial tow banners are the most effective means available to "give any real meaning to the Plaintiffs' exercise of their free speech rights." (Compl., ¶ 13.) Plaintiffs maintain that there are no viable alternative means of communication available that would enable them to express their political message.

Under their third theory of relief, Plaintiffs allege that Defendants cannot enforce the local ordinance because federal regulations have completely preempted local jurisdiction over airspace. Plaintiffs also raised for the first time in their Memorandum in Support of Summary Judgment a fourth theory upon which they claim the ordinance's enforcement against CBR is impermissible. They argue in the alternative that the ordinance is unenforceable against CBR, because Plaintiffs' tow-banner flights would occur outside of the terri-torial boundaries and jurisdiction of Honolulu.

## PROCEDURAL HISTORY

Plaintiffs CBR and Cunningham filed a complaint seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 on April 4, 2003. On May 20, Plaintiffs filed a Motion for Preliminary Injunction. Defendants Peter Carlisle, Lee D. Donohue, and the City and County of Honolulu responded by filing on June 10 a Motion to Dismiss, alleging lack of standing and ripeness, and an opposition to Plaintiffs' Motion for Preliminary Injunction on July 3. On August 13, 2003, after a hearing, the Court denied Plaintiffs' Motion for Preliminary Injunction as well as Defendants' Motion to Dismiss ("August 13 Order"). Proceedings were stayed while Plaintiffs appealed the order, which was affirmed by the Ninth Circuit on February 17, 2004. Plaintiffs filed a Motion for Summary Judgment on August 25, 2004. Defendants responded with their own Motion for Summary Judgment on September 1.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating

the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 323, 106 S.Ct. 2548.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. 2505. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. 2505. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: whether the evidence presents a sufficient disagreement to require submission to a jury, or it is so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

I. *The FAA's system of issuing "certificates of waiver" for aerial tow-banner operations does not constitute federal preemption of local regulations such as Honolulu's ban on aerial advertisements*

Plaintiffs contend that Honolulu's ordinance is invalid because it has been preempted by federal law. Specifically, Plaintiffs posit that the local ordinance has been preempted by the Federal Aviation Administration's nationwide policy of requiring would-be tow banner operators to obtain "certificates of waiver" prior to starting operations. The purpose of the FAA is to regulate "the use of the navigable airspace" so as "to ensure the safety of the aircraft and the efficient use of the airspace." (Def. Memo. In Support of Sum. Judg., Ex. J at 2.) To further this mission, it is authorized to issue "air traffic regulations" for:

(A) navigating, protecting, and identifying aircraft;

(B) protecting individuals and property on the ground;

(C) using the navigable airspace efficiently; and

(D) preventing collision between aircraft, between aircraft and land or water vehicles, and between aircraft and airborne objects

49 U.S.C. § 40103(b)(2). It was pursuant to this statutory authority that the FAA issued 14 C.F.R. § 91.311, which provides that "no pilot of a civil aircraft may tow anything with that aircraft except in accordance with the terms of a certificate of waiver issued by the [FAA]." Moreover, "no person may operate a restricted category civil aircraft within the United States—(1) over a densely populated area; (2) in a congested airway; or (3) near a busy airport," except as authorized by a certificate of waiver. (Def. Memo. In Support of Sum. Judg., Ex. J at 3 (citing 14 C.F.R. § 91.313(e)(internal punctuation omitted)).) To issue a waiver, the FAA need only find "that the proposed operation can be safely conducted under the terms of that certificate of waiver." *Id.* (citing 42 C.F.R. § 91.303(a)).

Plaintiffs correctly note that, although advertising regulations are traditionally the prerogative of the states as part of their general police power, no presumption of preemption applies in this instance because the ordinance "specifically targets for regulation an area where there has been a history of significant federal presence." (Pl. Memo. In Opp'n, ¶ 9 (citing *Skysign Int'l, Inc. v. Honolulu*, 276 F.3d 1109, 1116 (9th Cir.2002)).) Thus, this Court proceeds with the standard preemption analysis, which revolves around the finding of Congressional intent. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

■■■■ A state law that conflicts with federal law is "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). However, the preemption analysis "starts with the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress." *Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608 (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218,

230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Federal preemption will be found: (1) expressly through the explicit terms of the federal statute or action; (2) impliedly when the intent of Congress is clearly manifested or "implicit from a pervasive scheme of federal regulation that leaves no room for state and local supplementation;" or (3) when there is an actual conflict between state and federal law. *See, e.g., Barber v. State of Hawaii*, 42 F.3d 1185, 1189 (9th Cir.1994).

■■■ The issue of whether Honolulu Revised Ordinance § 40–6.1 is federally preempted has already been litigated in this jurisdiction. In *Skysign*, the Ninth Circuit upheld this same Honolulu ordinance against the claims of an aerial provider of commercial advertising who claimed, like Plaintiffs, that the ordinance was federally preempted by the FAA's waiver scheme. 276 F.3d at 1115–1118. The court found that, although the plaintiff in that case cited different federal aviation statutes that did explicitly preempt state action in other circumstances, nothing in the FAA's waiver system constituted express preemption. Turning to the issue of whether Congress had impliedly preempted local regulation by occupying the entire field, the court concluded that regulating certain aspects of air traffic does not alone exclude any state or local regulation of aerial advertising. *Id.* at 1116. "There 'mere volume and complexity' of the FAA's regulatory scheme do not, without some affirmative accompanying indication, compel a conclusion that the agency has sought to accompany the field to the full," the court explained. *Id.* at 1116–17 (citing *Hillsborough County v. Automated Med. Labs.*, 471 U.S. 707, 718–719, 105 S.Ct. 2371, 85 L.Ed.2d 714) ("We are even more reluctant to infer preemption from the comprehensiveness of regulations than from the comprehensiveness of stat-

utes.... To infer preemption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive.").

Examining the issue of whether the local ordinance should be invalidated as an impediment to the purposes of the federal law, the court held that, because the ordinance did not regulate flight paths, altitudes, and the like, it did not "encroach upon any of the subfields of aviation over which Congress has actually asserted exclusive authority." *Skysign*, 276 F.3d at 1117. The court found that rather than conflicting, the federal regulations appeared to explicitly account for the existence of concurrent state and local regulation. In reaching this conclusion, the court cited passages from the FAA's handbook for inspectors plainly stating that state and local ordinances are not superceded. *Skysign*, 276 F.3d at 1118. Thus, finding no express preemption, no implied preemption through government dominance of the field, and no conflict between the implementation of the federal and local regulations, the Ninth Circuit concluded that the Honolulu ordinance was enforceable. *Id.*

Plaintiffs assert that *Skysign* is no longer good law because of a change in FAA policy that occurred after that holding was issued. In particular, Plaintiffs base this assertion on an FAA notice issued on October 7, 2002, which deleted the portions of the inspector's handbook that disclaimed preemption of state and local regulations. (Pl. Concise Statement of Facts, Tab 2 at Ex. A.) The notice stated that the sections of the handbook had been deleted because they had

been misinterpreted to recognize the ability of state or local governments to use their police powers to regulate banner towing and aerial advertising flight

operations authorized by the [FAA]. State and local regulation of such flight operations could easily impede Federal policy and purpose and is federally preempted in the circumstances, including but not limited to those in which they regulate operations in navigable airspace.

(Pl. Concise Statement of Facts, Tab 2, Ex. A, Muise Decl.) This notice expired by its own terms in October of 2003. *Id.*

Plaintiffs attempt to bolster this argument by submitting letters issued by FAA representatives that give conflicting answers to the question of whether FAA waiver regulations preempt Honolulu's ordinance. In 1987, the FAA's regional counsel stated that, in his opinion, Honolulu's ordinance was preempted by the FAA's regulations for two reasons: the statutory grant of exclusive control of the navigable airspace to the FAA, and the "comprehensive and pervasive scheme of federal regulation." (Pl. Statement of Facts, Tab 2, Ex. F.) In 1996, FAA's regional counsel reiterated that opinion in a letter to a member of the Honolulu City Council. (Pl. Concise Statement of Facts, Tab 2, Ex. B.)

However, in July of 2003, FAA Deputy Chief Counsel James W. Whitlow issued a strongly contrary statement. (Def. Memo. In Support of Motion, Ex. I.) Whitlow's letter explicitly stated that the changes to the handbook were not aimed at preempting Honolulu's ordinance. *Id.* Instead, he wrote that the ordinance was "not considered to be preempted because it would not constitute a state or local law that dictates or interferes with aircraft flight paths and operations, imposes restrictions on aircraft equipment, or impacts in any other way the FAA's plenary authority and responsibility to ensure the safe and efficient use of the nation's airspace." *Id.* The FAA based its opinion that the ordinance was

not preempted, he wrote, on the fact that the ordinance addressed advertising, "a traditional area of local regulation, rather than regulat[ing] the navigable airspace." *Id.*

This Court sees no evidence that the *Skysign* opinion has been undermined by subsequent developments. Plaintiffs' evidence does tend to show that the FAA has, over time, changed its opinion regarding the federal preemption of local ordinances such as Honolulu's aerial advertising ban. However, the various opinions issued by FAA representatives make clear that the agency now concludes that Honolulu's ordinance is not preempted by the certificates of waiver system. While the FAA's conclusion is not binding upon this Court, it is persuasive.

■ Furthermore, as the Ninth Circuit explained in *Skysign,* a state law will not by its mere existence be classified as an impediment to federal law enforcement, and therefore invalidated under principles of conflict preemption, when the federal government clearly contemplated co-existence between federal and local regulatory regimes. *Skysign,* 276 F.3d at 1117. In the instant case, the waivers issued by the FAA make clear on their face that they do not intend to preempt state and local regulations. An FAA certificate of waiver obtained by Plaintiffs to allow aerial tow-banner operations in California in August of 2003—well after the *Skysign* ruling and the FAA handbook changes cited by Plaintiffs—states plainly: "This certificate constitutes a waiver of those Federal rules or regulations specifically referred to above. It does not constitute a waiver of any State law or local ordinance." (Def. Memo. In Support of Sum. Judg., Ex. H.) This statement makes clear that the FAA does contemplate the state and local regulations will exist concurrently with its waiver system.

Moreover, it is apparent that the FAA's regulatory scheme regarding tow banner operations is designed solely to protect public safety and regulate of the amount and flow of air traffic. (Def. Memo. In Support of Sum. Judg., Ex. J at 2–4.) These purposes are entirely separate from the purpose of the Honolulu ordinance, which is primarily to prevent the nuisance that would result if the skies above the city's beaches were congested with airborne advertisers, and to preserve the vital economic asset that exists in Hawaii's natural beauty.

In sum, the facts offered by both Plaintiffs and Defendants indicate that the federal government has neither expressly preempted state and local regulation nor so occupied the field with its waiver system that preemption must be implied. Further, there is no actual conflict between the local ordinance and the federal system. Thus, this Court finds that the ordinance has not been federally preempted.

II. *The Ordinance as applied to CBR does not violate the First Amendment, because it constitutes a reasonable, viewpoint neutral speech restriction in a nonpublic forum*

Plaintiffs' first Constitutional claim asserts that Honolulu's ordinance violates the First Amendment, as applied to the states and their subdivisions under the Fourteenth Amendment and 42 U.S.C. § 1983, because it deprives Plaintiffs of their right to freedom of speech. Because of the paramount importance of "uninhibited, robust, and wide-open" discourse about public issues to our democratic system, laws restricting political demonstrations are subject to careful scrutiny. *Frisby v. Schultz,* 487 U.S. 474, 479, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). Plaintiffs' aerial tow banners are without doubt a form of

political speech that is protected by the First Amendment. (*See* Pl. Statement of Facts, Tab 1, Cunningham Decl., Exs. A, B, C.) As Plaintiffs note, "[t]he fact that the messages conveyed . . . may be offensive to their recipients does not deprive them of constitutional protection." (Pl. Memo. In Support of Sum. Judg. at 6 (citing *Hill v. Colorado,* 530 U.S. 703, 715, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)).) However, even protected speech is not equally permissible in every place and at all times. *Frisby,* 487 U.S. at 479, 108 S.Ct. 2495.

A. *The airspace above the City and County of Honolulu is a non-public forum*

The right to conduct private expressive activity on public or government property depends on whether the property can be categorized as a public forum, a designated public forum, or a nonpublic forum. *Capitol Square Review and Advisory Bd. v. Pinette,* 515 U.S. 753, 761, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995). Public fora are places that have traditionally been open to the public for assembly, demonstration, and debate. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Public streets and sidewalks are the "archetype of the traditional public forum," because "time out of mind public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum." *Frisby v. Schultz,* 487 U.S. 474, 480, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (internal punctuation and citations omitted). Designated public fora are those spaces that are not traditionally used for discourse, but have been opened by the government for public expression in some circumstances. *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.,* 196 F.3d 958, 964 (9th Cir.1999). A state university, for example, will be considered a designated public forum when administrators have an express policy of making meeting facilities available to registered student organizations. *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981).

■ Nonpublic fora are places that are not by tradition or designation a forum for public communication. *Perry Educ. Ass'n,* 460 U.S. at 45, 103 S.Ct. 948. All public or government property that is not either a traditional or designated public forum will be considered a nonpublic forum. *DiLoreto,* 196 F.3d at 965. Examples of nonpublic fora range from a military base to the lobby of a state or county building. *See, e.g., Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505, (1976)(holding that despite limited civilian access, along with presence of sidewalks and streets, military base was nonpublic forum); *Grossbaum v. Indianapolis–Marion County Bldg. Authority,* 100 F.3d 1287 (7th Cir.1996) (upholding content-neutral ban on all private displays).

■ Plaintiffs argue that the airspace above the City and County of Honolulu is a public forum, or at a minimum, a designated public forum. (Plaintiffs' Memo. In Support of Sum. Judg. at 8.) In support of the notion that the airspace is a public forum, Plaintiffs assert that the airspace must either be thought of as an extension of the public fora of the beaches below, and alternatively that it fits the definition of a public forum because it has traditionally been used for assembly and speech. *Id.* Both of these arguments are without merit. An area does not become a public forum simply because it is adjacent to or visible from a public forum. As the Court explained in its Order of August 13, spatial proximity to a public forum is only determinative if the two areas are physically "indistinguishable." *See, e.g., Boos v. Barry,* 485 U.S. 312, 318, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988)(sidewalks surrounding

embassies indistinguishable from other public sidewalks); *United States v. Grace*, 461 U.S. 171, 177–78, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983)(sidewalks leading to United States Supreme Court building indistinguishable from other public sidewalks). Unlike the beach below, the skies are not a natural or traditional gathering place for human beings. The airspace and the ground are dissimilar in both physical characteristics and use, and therefore are not indistinguishable for purposes of forum analysis.

Likewise, Plaintiffs fail in their assertion that the airspace qualifies as a public forum because it is among those places that "have immemorially been held in trust for the use of the public." (Pl. Memo. In Support of Sum. Judg. at 7) (citing *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)). Plaintiffs assert that, "[f]or as long as aircraft have been able to tow banners, aerial advertising has been a way for people to communicate thoughts at major public gatherings across the United States." While that may be true, "as long as aircraft have been able to tow banners" isn't a great deal of time in relation to our nation's history of political speech. That man is present in the forum of the airspace at all is a relatively recent phenomenon and is brought about only through modern invention. Analogously, when faced with similar claims about the public forum status of airport terminals, the Supreme Court responded, "given the lateness with which the modern air terminal has made its appearance, it hardly qualifies for the description of having 'immemorially ... time out of mind' been held in the public trust and used for purposes of expressive activity." *Lee*, 505 U.S. at 680, 112 S.Ct. 2701. *See also, Jacobsen v. Bonine*, 123 F.3d 1272, 1274 (9th Cir.1997)(holding that interstate rest areas are not public fora because they are "modern creations" and "hardly the kind of public property that has by long tradition ... been devoted to

assembly and debate."). Based on its history, its physical characteristics, and its function, the airspace does not have among its principal purposes the free exchange of ideas—and, thus, it is not a public forum.

Alternatively, Plaintiffs argue that the airspace has become a designated public forum, because, they allege, it has been "opened for use by the public as a place for expressive activity." (Pl. Memo. In Support of Sum. Judg. at 8 (citing *Perry Educ. Ass'n v. Perry Local Educ. Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)).) They claim that the airspace has been opened to expressive activity by the FAA's certificates of waiver, which by themselves would permit Plaintiffs to engage in their expression.

■ These assertions are plainly false. The Supreme Court has clearly defined the way in which the government creates a designated public forum. As the court explained in *Cornelius v. NAACP Legal Defense and Educational Fund*:

> The government does not create a [designated] public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse. Accordingly, the Court has looked to the policy and practice of the government to ascertain whether it *intended* to designate a place not traditionally open to assembly and debate as a public forum.

473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) (internal citations omitted)(emphasis added). The City and County of Honolulu have evidenced clear intent not to open this forum to public discourse. No significant expressive activity in the form of aerial advertising has been permitted in Honolulu for decades. (Def. Memo. In Support of Sum. Judg., Ex. C, Whalen Decl.) Neither party cites any actual instance when expressive activity has been permitted to occur in Honolulu's

airspace. The fact that the FAA issues certificates of waiver is not dispositive, because, as aforementioned, the FAA's waiver system neither supercedes local regulations nor waives the requirements of them. Moreover, the FAA's waiver scheme is aimed at insuring the safety of aircraft and the smooth flow of air traffic; it has nothing to do with the expressive content of airborne objects and therefore cannot constitute a conscious decision to open the skies to expression. (Def. Memo. In Support of Sum. Judg., Ex. J at 2–4.) Thus, the skies above Honolulu have clearly not been opened for this kind of activity.

Moreover, the Supreme Court has said that the nature of the property and its "compatibility with expressive activity" are instructive in determining whether the government intended to create a designated public forum. *Cornelius*, 473 U.S. at 802, 105 S.Ct. 3439. The airspace is not naturally compatible with expressive activity. Defendants have put forward evidence that the distraction of aerial advertising would lead to increased accidents amongst drivers, pedestrians, and beachgoers. (Def. Memo. In Support of Sum. Judg., Ex. B., Kim Decl.) Plaintiffs deny this evidence as irrelevant and immaterial, countering with testimony that aerial signs do not actually obstruct the vision of onlookers, and cannot be confused with traffic signals. (Pl. Opp'n to Def. Statement of Facts, Tab–2, Cunningham Dep.) The Court found, however, in the Order of August 13, that aerial displays are distracting and create safety risks for onlookers below. (August 13 Order at 12.) The potential distraction to motorists and pedestrians has already been established in this jurisdiction as a factor weighing against compatibility with expressive activity. *Brown v. Calif. Dept. of Transportation*, 321 F.3d 1217, 1222 (9th Cir.2003)(holding that fences along highways are not public fora because of the potential distraction to motorists).

The airspace is more properly considered a nonpublic forum. The physical characteristics of the sky and it function as a pathway for transportation have meant that, traditionally, it has not been used for any significant quantum of political expression. Moreover, due to the pervasive system of local, state, and federal regulations to which the airspace is subject, it has clearly not been designated as a public forum for any expressive purposes. Thus, the ordinance will be subject to the more lenient standard of review employed when examining speech restrictions that occur in nonpublic fora.

B. *Honolulu's ordinance is constitutional because the restraint it imposes on expression reasonable and viewpoint neutral*

██ Even in nonpublic fora, government restrictions on expression may run afoul of the Constitution. Restraints on expressive activity in nonpublic fora do not violate the First Amendment if such restraints are: (1) "reasonable in light of the purpose served by the forum," and (2) viewpoint neutral. *Brown v. California Dept. of Transp.*, 321 F.3d 1217, 1222 (9th Cir.2003) (citing *Cornelius*, 473 U.S. at 806, 105 S.Ct. 3439).

i. *The ordinance is a reasonable attempt to preserve the natural beauty that is vital to the health of Honolulu's tourism economy*

██ The "reasonableness analysis focuses on whether the limitation is consistent with preserving the property for the purpose to which it is dedicated." *Brown*, 321 F.3d at 1222 (citing *DiLoreto*, 196 F.3d at 967). Limitations are reasonable if they "fulfill a legitimate need," and there is no requirement that the government employ the least restrictive means of achieving that goal. *ISKCON v. Lee*, 505 U.S. 672,

678, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992); *Sammartano v. First Jud. Dist. Ct.,* 303 F.3d 959, 966–67 (9th Cir.2002).

Honolulu's ban on aerial advertising serves legitimate needs, including minimization of distractions for passers-by, and preservation of the natural beauty of Oahu's environment. (Whalen Decl.; Preble Decl.; Kim Decl.) The ordinance is consistent with preserving the airspace for the purpose to which it is dedicated—transportation and the aesthetic enhancement of the community. *Id.*

The Supreme Court has established that the concept of public welfare may be broadly construed to include spiritual, physical, aesthetic, and monetary values. *Members of the City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 805, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (quoting *Berman v. Parker,* 348 U.S. 26, 33, 75 S.Ct. 98, 99 L.Ed. 27 (1954)). Thus, local governments have a legitimate interest in promoting safety by reducing distractions for motorists and other passers-by. *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 507–09, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *Ackerley Communications of the Northwest, Inc., v. Krochalis,* 108 F.3d 1095 (9th Cir.1997). Additionally, courts have established that local governments also have a more nebulous interest in improving the general quality of life of their citizenry by "avoiding visual clutter" and "esthetic harm." *See, e.g., Taxpayers for Vincent,* 466 U.S. at 804, 807, 104 S.Ct. 2118; *Metromedia,* 453 U.S. at 507–09, 101 S.Ct. 2882.

Plaintiffs argue that aesthetics are not sufficient justification for the restriction of political speech. (Pl. Opp. to Def. Statement of Facts at 6 (citing *Schneider v. New Jersey,* 308 U.S. 147, 162–63, 60 S.Ct. 146, 84 L.Ed. 155 (1939)).) To say that the ordinance is designed to mitigate "aesthetic harm" is misleading in Hawaii. In actuality, the ordinance is designed to protect what is perhaps the state's most valuable and fragile economic asset—the natural beauty upon which Hawaii's tourism economy relies. Revenue generated by tourism accounts for almost one quarter of Hawaii's gross domestic product, and almost one third of the state's employment. (Def. Memo. In Support of Sum. Judg., Whalen Decl., Ex. C.) Studies, and common sense, indicate that the scenic beauty of Hawaii is one of the primary factors weighed by potential visitors when determining whether to spend their vacation dollars in Hawaii or another locale. (Johnson Decl.; Egged Decl.; Whalen Decl.) More than half a billion dollars have been spent in the past five years on improvements to public areas in Waikiki, and a large proportion of these expenditures were for primarily aesthetic enhancements. (Def. Memo. In Support of Sum. Judg., Whalen Decl., Ex. C.) In light of the dual importance of Honolulu's physical appearance, being both an indicator of quality of life for the city's residents and a vital economic resource, preservation of aesthetic sensibilities is a legitimate government interest sufficient to satisfy this low level of scrutiny.

Plaintiffs also argue that because the ordinance outlaws all tow-banner operations, rather than imposing a permit process similar to that used for parades, it is unreasonable. (Plaint. Memo. In Support of Sum. Judg. at 23 (*citing* Crispin Dep., Tab–4 at 71, 72).) In *City of Ladue v. Gilleo,* which Plaintiffs cite to support this assertion, the Supreme Court invalidated a complete prohibition on the display of signs on private residential property. 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994). The court was strongly persuaded by the fact that citizens' ability to display their beliefs on their own private, residential property is a "venerable means of communication that is both unique and important." *Id.* at 54, 114 S.Ct. 2038. Particular emphasis was placed on our soci-

ety's long history of communication through such displays, as well as the irreplaceable nature of the right to communicate from one's own home. The court summarized:

> Although prohibitions foreclosing entire media may be completely free of content or viewpoint discrimination, the danger they pose to the freedom of speech is readily apparent—by eliminating a *common* means of speaking, such measures can suppress too much speech.

*Id.* at 55, 114 S.Ct. 2038.

In reaching this conclusion, the court relied on a line of cases that protected an individual's right to distribute pamphlets and handbills, and to engage in door to door dissemination of literature. *See Jamison v. Texas,* 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869 (1943)(handbills); *Martin v. City of Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943)(door-to-door distribution); *Lovell v. City of Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938)(pamphlet distribution). This Court earlier reached a similar conclusion in striking down Honolulu's ban on the display of political signs on one's own private residential property. *Runyon v. Fasi,* 762 F.Supp. 280, 285 (1991).

*City of Ladue* and its predecessor cases are distinguishable from the case at hand on numerous levels. Aerial tow banners are not a common or longstanding means of communication as are front yard signs, pamphlets, handbills, and door-to-door dissemination of literature. Additionally, as the District Court noted in its Order of August 30, these cases dealt with communication by an individual through means that tied the message to the speaker's identity. This is precisely the opposite of what CBR seeks: a means by which to insulate itself from its unwilling audience. (*See* Pl. Statement of Facts, Tab 1, Cunningham Decl. ¶¶ 38, 43; Tab 11, Holck Dep. at 12–13, 15–16, 24–27, 30–32.) In

that same vein, *City of Ladue* is also distinguishable based on the special consideration accorded to the home as a forum. *City of Ladue,* 512 U.S. at 58, 114 S.Ct. 2038 ("A special respect for individual liberty in the home has long been part of our culture and law, ... [and] that principle has special resonance when the government seeks to constrain a person's ability to speak there."). Moreover, the court was particularly concerned by a total ban on residential signs because, as an "unusually cheap and convenient form of communication," they are a virtually irreplaceable medium for those who lack the resources or mobility to engage in more expensive or physically challenging forms of communication. *Id.* at 57, 114 S.Ct. 2038. In contrast, aerial tow banners are not an indispensable means of communication for the common citizen that must be accorded special protection.

The ordinance is also unreasonable, Plaintiffs assert, because it does not allow other sufficient outlets for expression. (Pl. Memo. In Support of Sum. Judg. at 16.) They claim that the other forms of communication available to them—literature distribution, carrying hand held signs, wearing message-bearing T-shirts, etc.—are less effective and will not influence public opinion at the levels necessary to alter public policy regarding abortion. (Plaint. Statement of Facts, Tab 1, Cunningham Decl. ¶ 31.)

The Constitution "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Society for Krishna Consciousness,* 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). Indeed, the Supreme Court has established that there is no constitutional right to engage in the cheapest or most far-reaching form of communication possible. "That more people may be more easily and

cheaply reached [by a particular means of communication] ... is not enough to call forth constitutional protection for what those charged with public welfare reasonably think is a nuisance when easy means of publicity are open." *Kovacs v. Cooper,* 336 U.S. 77, 88–89, 69 S.Ct. 448, 93 L.Ed. 513 (1949).

Despite Plaintiffs assertions to the contrary, other easy means of publicity are open to them in Honolulu. Plaintiffs have used their internet website, their poster displays, speaking engagements, parades, and sign carrying to convey their message to the people of Honolulu. (Holck Dep. at 29–34, 38; *Center for Bio–Ethical Reform v. Comcast–Spectator, Inc.,* 1999 WL 601014, at *1 (E.D.Pa.1999).) They also drive a large truck through the city streets that bears their graphic displays on three eight-foot-by-eight-foot panels. (Holck Dep. at 15–17; Cunningham Dep. at 12–14.) This truck has made approximately 500 tours across Oahu over the past two years, with each drive lasting an average of five hours. *Id.* Other anti-abortion protesters have conveyed their message by carrying handheld signs at the State Capitol. (Holck Dep., Tab 4 at 34–37; Cunningham Dep., Tab 3 at ¶ 40.) Plaintiffs claim that these means are less effective, and that they subject their members to conflict with the public. Plaintiffs have available many of the traditional modes of communicating political speech; they cannot claim their Constitutional rights have been violated because one of the more novel albeit effective means of expression has been forbidden. Furthermore, there is no Constitutional right to be insulated from one's unwilling audience. As the District Court concluded in its Order of August 13, "[t]he First Amendment protects dialogue, debate, argument—the free *exchange* of ideas, and particularly when that exchange may become heated or confron-

tational." (August 13 Order at 22 (emphasis in original).)

ii. *The ordinance is viewpoint neutral, because it neither differentiates between different messages nor is selectively enforced on the basis of the speaker's point of view*

Because the ordinance constitutes a reasonable restriction on speech in a nonpublic forum, it will be upheld so long as it is viewpoint neutral. "Viewpoint discrimination is a form of content discrimination in which the government targets not subject matter, but particular views taken by speakers on a subject." *Brown,* 321 F.3d at 1223 (citing *Children of the Rosary v. City of Phoenix,* 154 F.3d 972, 980 (9th Cir.1998)). When classifying restrictions, limitations on "subject matter" refer to broad classes of speech, such as all commercial or noncommercial advertising. *See, e.g., Children of the Rosary,* 154 F.3d at 979, 981 (holding that city's ban on all noncommercial advertising on municipal buses was a reasonable subject matter restriction that was viewpoint neutral). "Viewpoint" restrictions, on the other hand, are those that limit speech with regard to the particular issue the speaker intends to address, or the opinion the speaker holds regarding that issue. *See, e.g., Police Dept. of the City of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) (holding that ban on picketing that exempted labor picketing was unconstitutional viewpoint discrimination). Restrictions based on subject matter, or even speaker identity, are permissible in nonpublic fora so long as they are reasonable and viewpoint neutral. *Cornelius,* 473 U.S. at 806, 105 S.Ct. 3439.

Plaintiffs argue that the ordinance discriminates on the basis of content because it allows an exception for marks signifying ownership to be displayed on the bodies of

planes. This argument fails. The exception allowing trademarks and trade insignias, etc., to be displayed on the bodies of aircraft is at most a subject matter restriction. It allows an exception for a broad category of speech—i.e., identifying marks—and makes no distinctions within that category that would suggest an intent to "suppress certain ideas that the city finds distasteful or that [the ordinance] has been applied [to plaintiffs] because of the views they express." *Taxpayers for Vincent*, 466 U.S. at 804, 104 S.Ct. 2118. It is entirely viewpoint neutral. Nothing in its text refers to the viewpoint of the speaker, and neither party has brought any evidence that the statute is selectively enforced. If Plaintiffs, as owners of a plane, would like to inscribe CBR's name or identifying mark onto the plane's body and fly over Waikiki beach, they could do so freely. Therefore, the ordinance is a reasonable, viewpoint neutral restriction on speech in a nonpublic forum, and it must be upheld by this court.

III. *The ordinance does not violate Plaintiffs' equal protection rights under the Fourteenth Amendment, because it does not discriminate based on viewpoint*

■ Plaintiffs argue that Honolulu's ordinance also violates the Equal Protection clause of the Fourteenth Amendment, because it prohibits Plaintiffs' political expression via aerial tow-banners while allowing certain "commercial speech" in the form of trade names, trade insignias, or trademarks. (Pl. Memo. In Support of Sum. Judg. at 25–26.) Once again, Plaintiffs misapprehend the difference viewpoint discrimination—which is subject to the strictest scrutiny under both the First Amendment and the Equal Protection Clause of the Fourteenth Amendment—as opposed to subject-matter distinctions, which are allowable in nonpublic fora and are generally subject to lower scrutiny.

■ The Equal Protection Clause is violated when the government grants the use of a forum to speakers whose views it finds acceptable, but denies access to those wishing to express disfavored or more controversial views. *Police Dept. of the City of Chicago v. Mosley,* 408 U.S. 92, 96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). Likewise, the government may not select issues it deems worthy of discussing or debating in public facilities, while excluding others. *Id.* This rule reflects the underlying policy that there is an " 'equality of status in the field of ideas,' and government must afford all points of view an equal opportunity to be heard." *Id.* Thus, once the government has made a forum available to some speakers, others may not be prohibited from following suit on the basis of their viewpoint.

As explained above, the ordinance does not differentiate between speakers based on viewpoint, nor has it been selectively enforced. Plaintiffs complain that, under the wording of the statute, the Goodyear Blimp would be allowed to cruise the skies above Waikiki beach, while their tow-banners would not. This is not discrimination. If Plaintiffs so choose, they too would be permitted to purchase a dirigible or other aircraft, emblazon their own identifying mark on it, and fly above the beach. This exception allowing a narrow class of subject-matter—identifying marks—is perfectly permissible and does not discriminate on the basis of viewpoint. Therefore, Honolulu's ordinance prohibiting tow banner operations does not violate the Fourteenth Amendment, because it does not discriminate against any speaker or form of speech on the basis of viewpoint.

IV. *This Court does not address whether tow-banner flights over the ocean and airport would be beyond the jurisdiction of Honolulu, because this argument contradicts the facts asserted in Plaintiffs' complaint and fails to satisfy the basic requirement of notice pleading*

In their Memorandum in Support of Summary Judgment, Plaintiffs argue that Defendants cannot enforce the ordinance against CBR because tow-banner operations that fly above the coastal waters and Honolulu airport, over which the state maintains jurisdiction, would be outside of the jurisdiction of the City and County of Honolulu. (Pl. Memo. In Support of Sum. Judg. at 35.) Indeed, they assert that Honolulu's jurisdiction ends on the beach at the high-water mark, and that city and county officials threaten to enforce the ordinance beyond that point. *Id.* To bolster this statement, Plaintiffs cite the depositions of government representatives who claimed the ability to enforce such flights and testified as to the boundaries of the city and county. *Id.* (citing Crispin Decl. at 37, 55, 60–61, 90–92; Lee Dep. at 56–58, 74–75; Muise Decl., Tab 2 at Ex. E).

After presenting these facts regarding Honolulu's geographic boundaries, the Plaintiffs conclude with the following:

> As a result, Plaintiffs are entitled to prospective and equitable relief by way of a declaration that the application of the Honolulu Ordinance against Plaintiffs for this speech activity violates Plaintiffs' right to freedom of speech and an injunction to prevent Defendants from prohibiting or interfering with Plaintiffs' pro-life speech activity.

(Pl. Memo. in Support of Sum. Judg. at 37.) The aforementioned facts do not lend any support to the assertion that the ordinance is unconstitutional. It would appear from this non sequitur that Plaintiffs are actually arguing in the alternative, as the subject heading above this passage of their memorandum suggests, that the City and County of Honolulu should be enjoined from enforcing the ordinance beyond its territorial limits, regardless of the ordinance's constitutionality.

Federal Rule of Civil Procedure 8(a) requires that Plaintiffs provide merely "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The U.S. Supreme Court has elaborated that a plaintiff "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Despite the lenience of the modern federal system of notice pleading, plaintiffs must at a minimum allege facts in the pleadings sufficient to place defendants on notice of plaintiffs' claims. "It is too often overlooked that federal pleading is still issue pleading, presenting a definite issue for adjudication." *Padovani v. Bruchhausen*, 293 F.2d 546, 550 (2nd Cir.1961). Pretrial memoranda and affidavits are not considered to be "pleadings" as the term is used by the Federal Rules of Civil Procedure. *See, e.g., McNair v. Monsanto Co.*, 279 F.Supp.2d 1290 (M.D.Ga.2003); *Marsh v. Johnson*, 263 F.Supp.2d 49 (D.D.C.2003); *Miller v. Brown & Williamson Tobacco Corp.*, 679 F.Supp. 485 (E.D.Pa.1988); *Lockert v. Faulkner*, 574 F.Supp. 606, 609 n. 3 (N.D.Ind.1983).

Plaintiffs CBR and Cunningham did not include any reference to these factual assertions in their original complaint, nor did they seek to amend their complaint to do so. In fact, the complaint states that "Plaintiffs want to engage in their peaceful pro-life demonstrations by displaying their

aerial tow banners *within or above the boundaries of Defendant Honolulu.*" (Compl. at ¶ 21 (emphasis added).) Plaintiffs' complaint does not meet the minimal standard of notice that is required to raise this issue. Allowing the Plaintiffs to proceed at this stage with an argument that was raised in a responsive pleading and that is factually contrary to the gravamen of the complaint on file would render even the most lenient notice pleading requirement a nullity. Therefore, this Court does not rule on the issue of whether Plaintiffs' proposed flight path would fall within the jurisdiction of the City and County of Honolulu, or whether, in the event that it did not, Honolulu's ordinance could nonetheless be lawfully enforced against CBR. Rather, this Court's inquiry will proceed to analyze Plaintiffs' claims in light of their stated intention to conduct tow-banner operations within the jurisdiction of the City and County of Honolulu.

*CONCLUSION*

In sum, this Court finds that no genuine issue of material fact exists that would necessitate resolution at trial. The evidence offered by both parties shows that the airspace above Honolulu's beaches is a nonpublic forum, because it is neither a traditional public forum, nor has it been designated as such by the government. As the airspace is a nonpublic forum, restrictions on speech within its confines need only be reasonable and viewpoint neutral. Honolulu's ordinance meets this low standard, and therefore complies with the mandate of the First Amendment. Moreover, because the ordinance does not discriminate on the basis of viewpoint, it does not violate the Equal Protection Clause of the Fourteenth Amendment. Finally, the ordinance is not preempted by any federal regulation, because neither express nor implied preemption has occurred, and the ordinance does not other-

wise conflict with the implementation of the federal regulatory scheme.

For the reasons stated above, the court GRANTS Defendants' Motion for Summary Judgment, and DENIES Plaintiffs' Motion for Summary Judgment.

IT IS SO ORDERED.